DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Nathaniel Roberts, Individually and on Behalf of the Certified Class, et al., ) ) ) Plaintiff(s), ) ) v. ) ) County of Mahoning, et al., ) ) Defendant(s). ) ) | CASE NO. 4:03 CV 2329  O R D E R |

On March 10, 2005, this Court issued a Memorandum Opinion (Doc. No. 193), including Findings of Fact and Conclusions of Law.  This Court found that the Class members (1) are being denied their constitutional rights not to be punished without due process of law and/or not to be subjected to cruel and unusual punishment, and (2) are being denied their constitutionally-protected right of access to the courts.

This Court found the remedy in this case is subject to the provisions of 18 U.S.C. §3626(a).  This Court appointed Vincent Nathan as Special Master (Doc. No. 108) consistent with the provisions of 18 U.S.C. §3626(f)(2)(A), (B) and (C).  Recognizing that deference to defendants to develop a remedial plan in the first instance is consistent with the United States Supreme Court's decision in *Lewis v. Casey*, 518 U.S. 343, 362-63 (1996), this Court directed the Special Master to assist the parties, specifically the Defendants, in attempting to find a solution to the problems which created the unconstitutional conditions at the jail.  The Special Master in his Fourth Report (Doc. No. 132) formally recommended that the Defendants form a

(4:03 CV 2329)

working group to develop a remedial plan to deal with the constitutional issues raised regarding the jail and to examine the justice system in Mahoning County to see how changes in the system could alleviate the overcrowding component of the unconstitutional conditions in the jail. There being no objection to this recommendation, this Court's Order of August 10, 2005 (Doc. No. 132) adopted the recommendations of the Special Master's Fourth Report. This Court's August 10, 2005 Order constituted an order for a less intrusive relief in compliance with 18 U.S.C. § 3636(a)(1) of the Prison Litigation Reform Act.

Pursuant to this Court's Order (Doc. No. 133), the Criminal Justice Working Group ("CJWG") was formed and began meeting in August of 2005. Over the next ten months, the CJWG met and made multiple reports of its progress. (*See*, Doc. Nos. 142, 154, 166 and 175). On May 1, 2006, the CJWG submitted its Final Report to this Court. (Doc. No. 191). This Court appreciates the great amount of effort and work that has gone into the formation of this final report and the CJWG's attempt to solve those problems outlined in the Memorandum Opinion of March 10, 2005. Further, the Defendants have reported that progress has been made toward resolving a number of the findings in that Memorandum Opinion including legal access, maintenance, outdoor recreation, and training. However, the central issue of population control to prevent future overcrowding remains unresolved.

By way of agreement between the Plaintiffs and Defendants, in May of 2005 the population at the Mahoning County Jail was limited to no more than 296 inmates during the remedial phase of this action. This Court recognized this agreement in its Order of April 7, 2005. (Doc. No. 117). Thereafter, due to the Common Pleas Court Ordered Release Mechanism

(4:03 CV 2329)

("Release Mechanism"), the population cap was implemented.  *See* CJWG First Interim Report (Doc. No. 142, Exhibit G).  After implementation of the Release Mechanism, the population crept from 296 to upwards of 400.  During this interim period, the parties attempted to regain control of the population by implementing additional procedures.  *See* CJWG Second Interim Report (Doc. No. 154, pp. 12-13 and Exhibit K).  These procedures fell short, in part as a result of judicially imposed "Do Not Release" ("DNR") Orders by the misdemeanant, county, and common pleas courts for certain inmates who would have otherwise been released pursuant to provisions of the Release Mechanism.  This left the Sheriff in a predicament of violating such DNR orders, the Common Pleas Court Ordered Release Mechanism, and/or the parties' agreed population limit in this case.

The Defendants reported that, on January 10, 2006, the Sheriff's Department released an inmate with a DNR Order issued by a Youngstown Municipal Court Judge who then sought to have the Sheriff held in contempt.  Such action prompted the Defendants to file a writ of prohibition in the Seventh District Court of Appeals seeking to have the appellate court determine the jurisdiction of the lower courts to issue "Do Not Release" Orders in violation of the Mahoning County Common Pleas Court Ordered Release Mechanism.  The Seventh District Court of Appeals granted the writ of prohibition on May 22, 2006 by a vote of 2 to 1.[1]  The decision, favorable to the Defendants, gives the Sheriff the ability to control the population using the Common Pleas Court Ordered Release Mechanism and prohibits the individual misdemeanant courts from affecting the population with DNR orders.  However, in a newspaper

---

[1] A copy of the Opinion and Dissent are attached hereto as Appendix 1.

3

(4:03 CV 2329)

article in *The Vindicator*, dated May 23, 2006, counsel for the City of Youngstown indicated that the City was contemplating filing an appeal to the Ohio Supreme Court or seeking a writ of prohibition regarding the Emergency Release Mechanism.[2]  Therefore, the possibility of a continuing challenge to the Sheriff's ability to control the population with the Common Pleas Court Release Mechanism remains troubling to the Court.[3]

In order to attempt to maintain a constitutional facility and remedy the population issue created by the DNRs, the Sheriff made the decision to open two additional pods. *See* CJWG Fourth Interim Report.  (Doc. No. 175, Exhibit B).  The Sheriff represented to this Court that these two additional pods are being run in the same constitutional fashion as the tower which was agreed to hold 296 inmates.  Imperative to the issue of population control is staffing.  However, due to the increasing jail population, in-service training has been delayed in 2006 in order to insure that adequate staffing levels are being properly maintained.

Defendants, through the CJWG, have attempted to implement a plan to deal with the overpopulation; but this plan remains dependent on factors beyond the parties' control.  In order to maintain population levels, the Sheriff must have the ability to release inmates to prevent overcrowding based on his staffing levels available on any particular day.  This requires a commitment from all common pleas, municipal, and county judges to maintain an agreed-upon

---

[2] A copy of the article, obtained from the newspaper's website, is attached as Appendix 2.

[3] An editorial published on May 25, 2006 in *The Vindicator*, the major newspaper in Mahoning County, encouraged the City of Youngstown to challenge the opinion taken by the majority in the prohibition action as set forth in Appendix 1.  A copy of that editorial, clipped from the online digital version of the newspaper, is attached as Appendix 3.

4

(4:03 CV 2329)

population cap.  But, to date, only the Common Pleas and County Court Judges have agreed by Court Order to an Overcrowding Release Mechanism.  *See* CJWG Final Report (Doc. No. 191, Exhibit E).

Since the Sheriff has redirected staff hired as relief for training in order to maintain security to open additional pods to accommodate the DNRs, at some point he will have to close pods and reduce the population to accomplish training.  Thus, without a mechanism to release inmates to accomplish training and to maintain population caps based on the number of staff available to provide adequate staffing, the Defendants are unable to control the jail population and to prevent unconstitutional overcrowding.

As of May 5, 2006, the jail population stood at 463 inmates.[4]  Consequently, this Court finds that it is unlikely that the plan to maintain constitutional population levels at the jail will be effective without some intervention by this Court in the form of a prisoner release mechanism.

Accordingly, this Court, in compliance with the Prison Litigation Reform Act of 1995 and the holding in *Lewis v. Casey*, 518 U.S. 343, 362-63 (1996), finds that the Defendants have been given an opportunity to correct the problem of jail overcrowding and have been unable to do so without further intervention by this Court.

It is hereby ordered, in accordance with 18 U.S.C. §3626(a)(3)(D), that the matter of determining a prisoner release order be referred to a three-judge panel in due course in accordance with 28 U.S.C. § 2284.[5]

---

[4]  *See* attached Appendix 4.

[5]  The responsibility to appoint a three-judge panel rests with the Chief Judge of the Sixth
(continued...)

(4:03 CV 2329)

Notwithstanding this decision and pending the convening of a three-judge district court, this Court encourages the CJWG to continue its efforts to achieve a resolution of all issues in this lawsuit without further intervention by this Court.

IT IS SO ORDERED.


| | |
|---|---|
| May 25, 2006 | *s/ David D. Dowd, Jr.* |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |

---

[5] (...continued) Circuit, Danny Boggs. Under the law, the three-judge panel must include at least one circuit judge. The Court is in the process of requesting Chief Judge Boggs to appoint the panel by Friday, June 30, 2006.