UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Nathaniel Roberts, et al., | ) | |
| | ) | CASE NO. 4:03 CV 2329 |
| Plaintiff(s), | ) | |
| | ) | Judge Alice M. Batchelder |
| v. | ) | Judge David D. Dowd, Jr. |
| | ) | Judge Dan Aaron Polster |
| Mahoning County, etc., et al., | ) | |
| | ) | O R D E R |
| Defendant(s). | ) | |
| | ) | |
| | ) | |

On August 28, 2006, the three-judge court convened a status conference and a hearing on the record to begin to address the question of whether a prisoner release order, as defined by 18 U.S.C. § 3626(a)(3), is required and permitted as a remedy in this case.  As a result of those proceedings, the Court hereby issues the following order and case management plan.

## I.  BACKGROUND

By Memorandum Opinion and Order dated March 10, 2005, Judge Dowd, who presided over the bench trial conducted in December 2004, found in favor of the plaintiffs.  See Doc. No. 93, including Findings of Fact and Conclusions of Law.[1]  However, no final Judgment was

---

[1]  In a Summary Conclusion, the Court stated:

The Court hereby declares that the plaintiff class has met its burden of proof with respect to its claims that class members (1) are being denied their constitutional rights not to be punished without due process of law and/or not to be subjected to cruel and unusual punishment, and (2) are being denied their constitutional right of access to the courts.  As a result, the Court finds in favor of the plaintiff class and against the defendants.

(continued...)

(4:03 CV 2329)

entered.[2]  Instead, with the assistance of a Special Master appointed pursuant to 18 U.S.C. § 3626(f)(1)(B), the parties have engaged in a complex and lengthy remedial phase aimed at reaching a final resolution.  The details of this phase have been explained in prior orders and need not be repeated here.  See Doc. No. 193.

On June 8, 2006, all parties and counsel were advised that, at Judge Dowd's request, Chief Judge Danny J. Boggs had appointed a three-judge court for the purpose of considering whether there should be a prisoner release order.

By Order dated August 2, 2006, the City of Youngstown was permitted to intervene as a matter of right under 18 U.S.C. § 3626(a)(3)(F), which gives "standing to oppose the imposition . . . of [a prisoner release order]" to any "unit of government whose jurisdiction or function includes . . . the prosecution or custody of persons who may be released from, or not admitted to, a prison as a result of a prisoner release order[.]"

The three-judge court then scheduled the August 28th hearing to consider how to proceed.[3]

---

[1]  (...continued)
Doc. No. 93, at 42-43.  The Court also ruled that the plaintiff class was entitled to recover its attorneys fees and costs.

[2]  In fact, to date, there has been no entry of Judgment within the meaning of Fed. R. Civ. P. 54.  Thus, there has been no final appealable order.

[3]  At the Court's request, the parties filed briefs addressing questions and issues posed by the Court.  See Doc. No. 218 (supplemented by Doc. No. 220); Doc. No. 221; and Doc. No. 222.

2

(4:03 CV 2329)

## II.  BURDEN OF PROOF AND PRODUCTION

Under the Prison Litigation Reform Act ("PLRA"), this three-judge court can enter a prisoner release order only if it finds by clear and convincing evidence that crowding is the primary cause of the violation of a Federal right and no other relief will remedy the violation of the Federal right.  18 U.S.C. § 3626(a)(3)(E).

Neither the plaintiff class nor the defendants have actually requested a prisoner release order.  Judge Dowd initiated the current proceedings on his own motion having come to the conclusion it was unlikely, after all the time and effort to date, that the parties would be able to resolve the case.[4]  This raises an interesting question: who bears the burden of proof by clear and convincing evidence that overcrowding is the primary cause of the constitutional violations at the Mahoning County Jail and that there is no other available form of relief?

At the hearing on August 28, 2006, counsel for both the plaintiff class and the defendants asserted that they are not requesting a prisoner release order and that, but for the current intervention by the City of Youngstown, they believe they would have been able to work out a settlement of this case.  As a result, they share the view that there is no burden on either of them to produce additional evidence; they believe they can rely on the findings already made by Judge

---

[4] Shortly after the decision in the liability phase of this case, the defendants filed a motion for appointment of a three-judge panel (Doc. No. 103, inexplicably re-filed as Doc. No. 109) and plaintiffs subsequently filed a motion joining in that request (Doc. No. 107).  While the remedial phase of the case proceeded, these motions remained pending and eventually appeared on the six-month report of pending motions.  By that time, the work of the Special Master was well underway and Judge Dowd was considering the Master's recommendation for the formation of a Mahoning County Criminal Justice Working Group.  Therefore, on September 2, 2005, the motions were denied, for record purposes only, without prejudice to renewal or refiling.  (Doc. No. 136).  The motions were not re-filed.

3

(4:03 CV 2329)

Dowd in March 2005, perhaps buttressed by their stipulations of fact regarding the current situation, and that the burden would be on the intervenor to challenge those findings and/or stipulations of fact.

The City is of the contrary view that a prisoner release order, if any, would be a remedial response to the defendants' unconstitutional operation of the County Jail. Since the City plays no role in that operation and has not been found to be in violation of anyone's constitutional rights, it takes the position that the party seeking a remedy has the burden of proof.

There is no doubt that the plaintiff class filed their lawsuit seeking (1) a declaration that the County Jail operates in an unconstitutional fashion and (2) an order permanently enjoining such unconstitutional operation. If a prisoner release order is the only way to stop the unconstitutional behavior, then any such order would be, in essence, a response to the plaintiffs' complaint. Therefore, the burden would be on the plaintiff class to persuade the three-judge court that the two elements set forth in the statute have been met.

That having been said, "district courts enjoy wide latitude in matters concerning the ordering of proof and the presentation of evidence." Morales Feliciano v. Rullan, 378 F.3d 42, 57 (1st Cir. 2004) (concluding that the district court's decision to require the defendant, rather than the plaintiff, to go first in the order of presentation of evidence did not amount to a shifting of the burden of proof); see also Toth v. Grand Trunk R.R., 306 F.3d 335, 345 (6th Cir. 2002) (determinations regarding order of proof and scope of rebuttal are reviewed for abuse of discretion).

4

(4:03 CV 2329)

In Morales Feliciano, the First Circuit was considering a challenge by Puerto Rico to the district court's denial of the Commonwealth's request under the PLRA for termination of injunctive relief relating to delivery of prisoner health care which had been put in place by way of a consent decree.  The district court, following an evidentiary hearing, refused to lift the injunction, finding that the constitutional violations persisted even after several years under the injunctive order.  On appeal, the court noted:

> The decision to require the Secretary to present his proof first was not an abuse of discretion.  In arriving at its decision on the motion to terminate, the court was free to rely on any aspect of the record that tended to shed light on whether constitutional violations persisted.  See Laaman v. Warden, N.H. State Prison, 238 F.3d 14, 17-18 (1st Cir.2001) (noting that the court's familiarity with the record and its receipt of periodic reports may afford it "comprehensive knowledge of whether a prison is, or is not, continuing to violate the consent decree").  At the beginning of the hearing, the court had before it a full evidentiary record, developed over many years, together with a cache of periodic reports as to progress under the consent decree.  This plethoric evidence was sufficient, if unrebutted, to support a finding that constitutional violations endured.  With this in mind, it was sensible for the court to invite the Secretary to offer evidence to the contrary.

Morales Feliciano, 378 F.3d at 57.

In the instant case, there is a similarly "full evidentiary record" and "a cache of periodic reports" developed both at trial in December 2004 and post-trial by way of the work of the Special Master and the parties.  Although the burden of proof is still on the plaintiff class to establish the two prerequisites for injunctive relief in the form of a prisoner release order, the Court is of the view that it is free, in light of that existing record, to require the intervening City to go first in the order of presentation of evidence.  The City's burden of production is to show that circumstances have so changed since Judge Dowd's findings of March 2005 that there is

5

(4:03 CV 2329)

currently no problem with overcrowding and/or that there is some other suitable form of relief to remedy the federal constitutional violation.

At this point it is premature to decide which party will go first in the presentation of evidence.  However, the Court does make clear herein that plaintiffs bear the burden of proof (in that it is plaintiffs who seek relief for constitutional violations) even though the Court <u>may</u> ultimately decide that the City will be required to go first in the order of presentation of evidence.

### III.  SUBSEQUENT PROCEEDINGS

There is no doubt that this three-judge court will need to hear evidence to update the fact-findings; it cannot rely solely on the findings Judge Dowd made on March 10, 2005, although those findings may still prove true.

The Special Master appointed to assist the Court has filed several reports.  The Mahoning County Criminal Justice Working Group, which was formed to try to reach a resolution, has also filed its report.  None of the materials or information submitted in these various reports, however, was produced under oath nor was it subject to cross-examination.  Although these reports are instructive and need not be ignored,[5] the Court is of the view that, in order to determine by clear and convincing evidence whether crowding is the cause of constitutional violations at the County Jail, it needs information of an evidentiary nature regarding the current situation at the Jail.

---

[5] All of the reports enjoy a certain reliability by virtue of their having been filed by attorneys who are officers of the court sworn to a level of ethical and professional accountability.

6

(4:03 CV 2329)

Special Master Vincent Nathan, who was chosen by the parties to serve as the Special

Master because of his particular expertise in the area of criminal justice and jail operations, who

was appointed as the agent of the Court to assist and guide during the remedial phase, and who

has worked very closely with both parties and interested non-parties for over a year, has

developed an intimate knowledge of the situation as it currently exists in Mahoning County with

respect to the constitutional issues in this case.  In the Court's view, he is in a unique position to

supply the evidence which the three-judge court requires regarding the current state of affairs.

Accordingly, the Court hereby appoints Mr. Nathan to serve as a court expert within the

meaning of Fed.R.Evid. 706(a) for the express purpose of serving and filing an expert report

collecting his findings relative to the question of whether crowding at the Jail is the cause of

constitutional violations.  If the answer is in the affirmative, Mr. Nathan shall also opine as to

whether, in his view, there is any other viable form of relief, short of a prisoner release order,

that could remedy the violations.  Mr. Nathan's expert report shall be served and filed by

November 30, 2006.

Mr. Nathan may wish to make a site visit to collect current data for his report,[6] in

addition to drawing upon the data he has already collected over time in his role as Special

---

[6] Mr. Nathan will be free to shape any such visit as he sees fit.  However, it occurs to the
Court that, at a minimum,  the following might be helpful information: recent daily population
figures, including statistics on double-celling; recent classification breakdowns; recent staffing
levels; numbers of violence and/or incident reports; existing maintenance problems related to
population levels.  It might also be useful to know, if that information is gatherable, how the
Common Pleas Court's Emergency Release Mechanism has or has not affected the Jail
population.
   In the event such a visit is made, the Court will leave it to Mr. Nathan's discretion
whether or not to engage the services of his graduate assistant.

(4:03 CV 2329)

Master.  The parties will be required to cooperate completely with Mr. Nathan if he chooses to

conduct such a visit.  The three-judge court will undoubtedly call upon him to testify with

respect to the findings and he will be subject to cross-examination at that time.  Mr. Nathan will

be compensated at the same rate as he was compensated for his Special Master duties;[7] however,

he shall submit any itemized bills for expert services separately from his itemized bills for

Special Master services.[8]

Any party, including the plaintiff class, may hire its own expert to address the same issue

Mr. Nathan will be addressing.  The identity of any such expert must be disclosed in writing to

the three-judge court and all parties by December 29, 2006; in the alternative, there must be filed

a written statement that the party does <u>not</u> intend to engage a separate expert with respect to the

issue at hand.  All reports of the parties' experts must be served and filed by February 16, 2007.

Rebuttal reports, if any, shall be served and filed by March 9, 2007.  All depositions of experts

(including any deposition of Mr. Nathan as the court's expert) shall thereafter be completed by

April 13, 2007, and copies of the deposition transcripts filed with the Court by April 27, 2007.

---

[7]  The Court is under the impression that, as a court expert, Mr. Nathan is paid from local funds, whereas in his role as Special Master under the PLRA, he is paid from centralized funds.

[8]  For purposes of the task of the three-judge court, Mr. Nathan will be utilized as a court expert; however, that does not mean he is relieved of his duties as Special Master to Judge Dowd.  Although those duties will be suspended for the time being due to the nature of the current task, it is highly likely that there may be need for Mr. Nathan's services as a Special Master as the case proceeds beyond the convening of the three-judge court deciding the question of a prisoner release order.

The three-judge court expressly finds that there is no conflict since, in both roles, Mr. Nathan is the court's agent providing assistance with respect to the remedial phase of the case.

Further, the Court is mindful that Mr. Nathan's most recent projected budget has expired. However, since he will be functioning for the next few months primarily as the court expert, there will be no need to submit a new budget until further order to do so.

(4:03 CV 2329)

There will be no extensions of any of these deadlines; therefore, parties should keep that fact in mind when engaging the services of any expert.

## IV.  HEARING

The Court will conduct a two-day hearing on the question of whether to issue a prisoner release order beginning on May 16, 2007 and continuing through May 17, 2007.  Each day's proceedings will begin at 9:00 a.m. and continue until no later than 5:00 p.m., unless finished sooner.

The Court will determine later whether it will require any kind of pre-hearing briefs.[9]

IT IS SO ORDERED.

FOR THE COURT

__s/ David D. Dowd, Jr.____

__September 7, 2006_____          David D. Dowd, Jr.
Date                                   U.S. District Judge

---

[9]  All parties, including the intervenor, are strongly encouraged to continue their efforts to resolve this case on their own.  It is the Court's hope that the generous time frames set forth herein will permit settlement discussions to continue parallel with preparations for the scheduled hearing.